IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>v.<br><br>JON T. MCBRIDE,<br><br>                    Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR MISTRIAL AND/OR NEW TRIAL<br><br><br><br>Case No. 1:13-CR-27 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant Jon McBride's Motion for Mistrial and/or New Trial.[1] For the reasons discussed below, the Court will deny Defendant's Motion.

## I.  BACKGROUND

On March 27, 2013, the grand jury returned a five-count Indictment against Defendant. Defendant was charged with (1) making a false material statement on a tax return for tax year 2005, (2) willfully attempting to evade or defeat the assessment of taxes for tax year 2006, (3) willfully attempting to evade or defeat the assessment of taxes for tax year 2007, (4) willfully attempting to evade or defeat the assessment of taxes for tax year 2009, and (5) willfully attempting to evade or defeat the payment of taxes for tax years 1999, 2000, 2001, and 2002.

The Court held a five-day jury trial, beginning on September 15, 2014. Following closing arguments, Defendant orally moved for a mistrial based on statements made by the government during closing arguments. The Court directed Defendant to submit a written motion for mistrial to allow Defendant time to fully prepare properly supported arguments. The jury

---

[1] Docket No. 101.

returned a guilty verdict as to Counts I–IV, and a not-guilty verdict as to Count V.  Defendant submitted the instant Motion for Mistrial and/or New Trial on October 2, 2014.

## II.  LEGAL STANDARD

"While the Federal Rules of Criminal Procedure offer little guidance on when judges should grant mistrial motions, [the Tenth Circuit] has focused on 'whether [the defendant's] right to a fair and impartial trial was impaired.'"[2]  "When evaluating a motion for mistrial, a district court must first determine whether an error has occurred and, if so, whether that error impaired the 'defendant's right to a fair and impartial trial.'"[3]  When considering whether prosecutorial misconduct warrants a mistrial, the Tenth Circuit considers "the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case as a whole."[4]  The Tenth Circuit has also explained that it "will not overturn a conviction on account of improper argument by the prosecutor 'unless the prosecutor's misconduct was enough to influence the jury to render a conviction on grounds beyond the admissible evidence presented.'"[5]

Federal Rule of Criminal Procedure 33 permits the Court to "vacate any judgment and grant a new trial if the interest of justice so requires."  "In other words, if after weighing the evidence and the credibility of the witnesses, the court determines that 'the verdict is contrary to the weight of the evidence such that a miscarriage of justice may have occurred,' it may grant the

---

[2] *United States v. Gabaldon*, 91 F.3d 91, 93 (10th Cir. 1996) (quoting *United States v. Torres*, 959 F.2d 858, 860 (10th Cir. 1992)) (second alteration in original).

[3] *United States v. Pulido-Jacobo*, 377 F.3d 1124, 1133 (10th Cir. 2004) (quoting *United States v. Meridyth*, 364 F.3d 1181, 1183 (10th Cir. 2004)).

[4] *United States v. Martinez-Nava*, 838 F.2d 411, 416 (10th Cir. 1988).

[5] *United States v. Peña*, 930 F.2d 1486, 1491 (10th Cir. 1991) (quoting *United States v. Espinosa*, 771 F.2d 1382, 1401 (10th Cir. 1985)).

defendant's motion."[6]  "A motion for a new trial is not regarded with favor and is only issued with great caution."[7]

### III.  DISCUSSION

Defendant argues that a mistrial is warranted because the government (1) improperly attacked Defense counsel's integrity; (2) misstated the law governing Defendant's good-faith defense; (3) improperly referred to facts and law not in evidence; and (4) appealed to the jurors' passions, in an attempt to instill bias and hostility toward Defendant.

A.   DEFENSE COUNSEL'S INTEGRITY

Defendant argues that the government attacked Defense counsel's integrity by asserting that Defendant's theory of the case required the jury to suspend their common sense and by referring to Defendant's case as "a ruse," "a double ruse," and "a long detour."[8]

"Attacks on defense counsel can at times constitute prosecutorial misconduct."[9]  "'The prosecutor is expected to refrain from impugning, directly or through implication, the integrity or institutional role of defense counsel.'"[10]  The Tenth Circuit has acknowledged that it is unnecessary and unwarranted to refer to a defendant's testimony as a lie; nonetheless, based on

---

[6] *Gabaldon*, 91 F.3d at 93 (quoting *United States v. Evans*, 42 F.3d 586, 593 (10th Cir. 1994)).

[7] *United States v. Herrera*, 481 F.3d 1266, 1269–70 (10th Cir. 2007) (citing *United States v. Trujillo*, 136 F.3d 1388, 1394 (10th Cir. 1998)).

[8] Docket No. 102, at 71–72, 75.

[9] *Wilson v. Sirmons*, 536 F.3d 1064, 1119 (10th Cir. 2008).

[10] *Id.* (quoting *United States v. Bennett*, 75 F.3d 40, 46 (1st Cir. 1996)).

the context of the case, such statements may be permissible commentary on the veracity of a defense presented.[11]

On their face, the prosecutor's comments could be understood to impugn defense counsel's integrity by characterizing the defense's arguments as an attempt to trick or mislead the jury. Such comments would be improper. On the other hand, Defendant's case relied heavily on his good-faith defense—which necessarily puts at issue the question of whether Defendant's belief was held in good faith or was, for example, crafted with litigation in mind. When viewed in that light, perhaps the comments were proper argument about an issue before the jury. But the Court need not determine whether the comments were improper, because Defendant's right to a fair and impartial trial was not impaired.

First, the Court instructed the jury not to consider counsel's statements and arguments as evidence on two separate occasions—once after being empaneled and again immediately prior to closing arguments.[12]

Second, for the reasons discussed above, it is not clear that the extent of the misconduct was great. The government had the burden to prove beyond a reasonable doubt that Defendant acted willfully. Defendant challenged the government's evidence of willfulness by asserting a good-faith defense, and the prosecutor's comments summarized the government's response to that defense. The Court finds that the prosecutor's comments were not disparaging defense counsel's integrity but instead were challenging the credibility of Defendant's asserted belief—a

---

[11] *United States v. Hernandez-Muniz*, 170 F.3d 1007, 1012 (10th Cir. 1999).

[12] Docket No. 95, at 3 ("Statements, arguments, and questions by lawyers are not evidence."); *id.* at 11 ("You are not to consider the . . . arguments of counsel as evidence.").

challenge that the Court finds permissible based on reasonable inferences and credibility determinations that the jury could make based on the evidence presented.

Third, when viewed in the context of the entire trial, the prosecutor's comments did not play a major role. The government did not rely on bald assertions that Defendant or defense counsel was not truthful when the government attempted to undermine Defendant's good-faith defense. Rather, the government presented evidence demonstrating that Defendant performed acts that the jury could interpret as being inconsistent with the asserted good-faith defense.

Fourth, it does not appear that the prosecutor's comments influenced the jury to render a verdict on grounds beyond the admissible evidence presented at trial. As the Court previously held in the Memorandum Decision and Order Denying Defendant's Rule 29 Motions ("Rule 29 Order"),[13] the government presented sufficient evidence to support a guilty verdict on all five counts. But the jury returned a not-guilty verdict as to Count V. Defendant relied almost entirely on his good-faith defense for all five counts. Consequently, even if the Court assumes that the prosecutor's comments were improper, it is unlikely that the comments actually impaired Defendant's right to a fair and impartial trial because the jury appeared to give at least some credence to those arguments that the prosecutor characterized as a ruse.

Based on the foregoing, the Court finds that Defendant has not demonstrated that these comments warrant a mistrial or a new trial.

B.   LAW GOVERNING GOOD-FAITH DEFENSE

Defendant argues that the government misled the jury by asserting that Defendant was not entitled to a good-faith defense.

---

[13] Docket No. 87.

The Court could interpret Defendant's argument broadly—that once the good-faith defense was permitted by the Court, the government could not assert that Defendant was not entitled to it. But that is not what the government asserted. The government's comments were an attempt to distinguish why the good-faith defense was not available to Defendant based on evidence presented at trial. Closing arguments of this nature are proper.[14]

The Court, however, will also deal with the Defendant's argument more specifically. Defendant's argument relies on four statements made during the government's closing argument.

First, Defendant argues that the government misled the jury by stating, "[Defendant is] not entitled to a good-faith defense if [his] . . . disagreement is a disagreement with the law, can't use it; if it's a disagreement with the Constitution, he can't use it; and he can't use it no matter how sincerely or earnestly he holds it."[15] The Court instructed the jury that "neither a defendant's disagreement with the law, nor his belief that such law is unconstitutional, no matter how earnestly held, constitute a defense of good faith misunderstanding or mistake."[16] The Court finds that the prosecutor properly stated the law and therefore this statement was not improper.

Second, Defendant contends that the following statement misled the jury: "[If Defendant is] disagreeing with the constitutionality of the law, [then] that too does not entitle him to a good-faith defense . . . . You can't use that defense if you disagree with the law or if you disagree with

---

[14] *See United States v. Simpson*, 7 F.3d 186, 190 (10th Cir. 1993) (allowing prosecution "to argue in its closing argument that the evidence of good faith was very slim").

[15] Docket No. 102, at 78.

[16] Docket No. 95, at 38; *see United States v. Ware*, 608 F.2d 400, 405 (10th Cir. 1979) ("[N]either a defendant's disagreement with the law, nor his belief that such is unconstitutional no matter how earnestly held constitute a defense of good faith misunderstanding or mistake.").

6

something in the Constitution."[17]  Again, the prosecutor's comment was not improper because it was an accurate statement of the law.

Third, the government stated, "All the proof is of lawful obligations he ignored, violated, failed to follow, thumbed his nose at, that's what the evidence says.  If that's the case, he didn't have an intent to perform any lawful obligations, he's not entitled to the good-faith defense."[18]  The Court instructed the jury that "[t]he good faith of the defendant is a complete defense to all five crimes charged . . . . While the term 'good faith' has no precise definition, it means, among other things, an honest belief, a lack of malice, and the intent to perform all lawful obligations."[19]  Consistent with the Court's instruction, the prosecutor's comments explain that a defendant who did not intend to perform his lawful obligations would not be able to avail himself of the good-faith defense.  As such, the statement was not improper.

Fourth, after describing a definition of income in the tax-law context, the government argued, "[Defendant] seems to disagree with that definition.  He comes up with his own definition.  If that's what you find, ladies and gentlemen, then he's not entitled to a good-faith defense."[20]  As described above, the Court instructed the jury that "the good-faith defense encompasses misunderstanding of the law, but neither a defendant's disagreement with the law, nor his belief that such law is unconstitutional, no matter how earnestly held, constitute a defense of good faith misunderstanding or mistake."[21]

---

[17] Docket No. 102, at 79.

[18] *Id.* at 83.

[19] Docket No. 95, at 38.

[20] Docket No. 102, at 79.

[21] Docket No. 95, at 38.

The Court could draw fine distinctions between the possible interpretations of the government's comment.  For example, the statement could be interpreted to mean that Defendant disagreed with a prevailing definition of the term "income" under the law according to tax-law professionals and courts, or that Defendant's misunderstanding of the U.S. tax code led him to an incorrect understanding of the definition of income despite the prevalence of a contrary interpretation.  But even if the Court were to conclude that the prosecutor claimed that Defendant's misunderstanding of the law precludes his good-faith defense—which would be an incorrect statement of the law—a mistrial would not be warranted.

The Court instructed the jury prior to opening arguments and again prior to closing arguments that the statements and arguments of counsel were not evidence.  The jury was also instructed that the Court would provide them with the law applicable to this case.[22]  Moreover, the extent of any misconduct was minimal—the comment was isolated, and it was made in the context of other arguments that properly stated the law.  The comment also played a minimal role in the trial as a whole.  The government did not attempt to undermine Defendant's good-faith defense by arguing that Defendant's misunderstanding somehow precluded the defense.  Instead, the prosecution argued that Defendant's good-faith defense was not believable or that Defendant did not intend to fulfill his lawful obligations, which is inconsistent with Defendant's asserted good-faith defense.  Such argumentation is proper for the government's summation.

---

[22] *Id.* at 2 ("You will then have to apply those facts to the law as the Court will give it to you."); *id.* at 10 ("After all the evidence is in, the Court will give you instructions on the law . . . ."); *id.* at 11 ("Now that you have heard the evidence, it becomes my duty to give you the instructions of the Court as to the law applicable to this case.  It is your duty as jurors to follow the law as stated in the instructions of the Court . . . .").

Finally, for many of the reasons described above and in the Court's Rule 29 Order, it does not appear that the government's comments persuaded the jury to convict on grounds beyond the admissible evidence.

Based on the foregoing, the Court finds that Defendant has failed to demonstrate that a mistrial or a new trial are warranted.

C.      FACTS AND LAW NOT IN EVIDENCE

"[T]he cardinal rule of closing argument [is] that counsel must confine comments to evidence in the record and to reasonable inferences from that evidence."[23]  "It is . . . improper for a prosecutor to misstate the evidence or the law . . . ."[24]

Defendant argues that during closing arguments the government improperly read from and repeatedly cited a Supreme Court decision—in which the Court defined the term "income"—that was not in evidence.  For example, the government began its closing arguments by stating, "In 1920 the Supreme Court defined income as the gain derived from capital, from labor, from the combination of both."[25]

The government argues that, because neither the defense nor the prosecution offered a proposed jury instruction defining the term "income," "the parties [were] free to argue for whatever definition was supported by the testimony and common sense."[26]  The government

---

[23] *United States v. Lopez-Medina*, 596 F.3d 716, 740 (10th Cir. 2010) (quoting *Whittenburg v. Werner Enters. Inc.*, 561 F.3d 1122, 1128–29 (10th Cir. 2009)) (alterations in original).

[24] *Stouffer v. Trammell*, 738 F.3d 1205, 1221 (10th Cir. 2013).

[25] Docket No. 102, at 3.

[26] Docket No. 117, at 10.

9

contends that its reference to the Supreme Court's definition corresponds with the common sense definition of the term and was based on the following testimony by IRS Agent Kurt Kotter:

> Q      Does your knowledge include the definition of income under our country's tax laws?
> A      Yes.
> Q      How would you describe income as defined by our tax laws?
> A      The general definition in the Internal Revenue Code basically just states that the income includes income from all sources, which may include income from business sources, income from partnerships, income from wages. It's kind of a general definition.[27]

It is not clear how Mr. Kotter's testimony provided a basis for the government's reference to a Supreme Court definition of the term "income." It is equally unclear how invoking the Supreme Court's authority while paraphrasing the definition was plausibly intended to argue for a common sense definition. But even if the Court assumes that the government's references to the Supreme Court were improper, there is no indication that the comments impaired Defendant's right to a fair trial.

First, Defendant has not demonstrated how the comments could have affected the jury's deliberations. The precise definition of the term "income" under U.S. tax law was not an issue before the jury. None of the charges against Defendant required the jury to consider the correct definition of the term. And neither did Defendant's good-faith defense. Defendant argued that he had a good-faith belief that, to the extent that the Supreme Court has defined the term "income," Defendant's understanding of that definition is different from the IRS's understanding. But the substantive difference between Defendant's and the IRS's understanding of the term was not a material issue before the jury—as illustrated by the lack of evidence introduced by either party to explain the different interpretations.

---

[27] Docket No. 107, at 60.

Second, to the extent that Defendant objects to the prosecutor's reference to the existence of a Supreme Court decision discussing the definition of the term "income," that fact was in evidence. Defendant himself testified about the Supreme Court's interpretation of the term "income," as follows:

> Q   We're talking about whether the courts agree with you on your definition of income.
> A   The Supreme Court does, yes.
> Q   Supreme Court does, but nobody follows the Supreme Court these days?
> A   They have defined income through a series of case law, but they certainly haven't just come out -- Congress chooses not to give us a definition of that word. I wish they would.[28]

Third, whether the government's comments are conceived as facts not in evidence or a statement of the law that was not properly presented to the jury, the Court instructed the jury to disregard the comments on multiple occasions. To the extent that Defendant objects to the comments because the prosecutor might have been attempting to introduce facts not in evidence, the jury was instructed to disregard such comments twice—once immediately before opening arguments and again immediately before closing arguments.[29] And to the extent that Defendant objects because the prosecutor might have been attempting to instruct the jury on the law, the jury was also instructed to disregard such comments.[30]

Fourth, the prosecutor's comments did not play a large role in the government's case as a whole. The government began its closing argument by paraphrasing the definition and

---

[28] Docket No. 109, at 206.

[29] Docket No. 95, at 3 ("Statements, arguments, and questions by lawyers are not evidence."); *id.* at 11 ("You are not to consider the . . . arguments of counsel as evidence.").

[30] *See, e.g.*, *id.* at 2 ("You will then have to apply to those facts the law as the Court will give it to you."); *id.* at 11 ("It is your duty as jurors to follow the law as stated in the Instructions of the Court, and to apply the rules of law to the facts as you find them from the evidence received during the trial.").

11

occasionally referring to the definition during closing and rebuttal arguments.  But the Supreme Court's definition did not play a noticeable role in the government's case as a whole.  As discussed above, the definition was referenced vaguely during Agent Kotter's and Defendant's testimony, and those statements did not serve key functions in the government's or Defendant's case.

Finally, for many of the reasons described above and in the Court's Rule 29 Order, it does not appear that the government's comments persuaded the jury to convict on grounds beyond the admissible evidence.

Based on the foregoing, the Court finds that Defendant has failed to demonstrate how the prosecutor's comments relating to a Supreme Court definition of the term "income" warrant a mistrial or new trial.

D. JURORS' PASSIONS

Defendant contends that the government's closing argument improperly appealed to the jurors' passions.

"A prosecutor may not use closing argument to inflame the passions and prejudices of the jury."[31]  "Appeals to the jury's emotion or sense of vengeance 'call into question the integrity of the criminal justice system' by encouraging the jury to convict based on outrage, and not on the evidence."[32]  "This restriction 'is balanced, however, by the acknowledgement that in an

---

[31] *Malicoat v. Mullin*, 426 F.3d 1241, 1256 (10th Cir. 2005).

[32] *Wilson*, 536 F.3d at 1121 (quoting *Bland v. Sirmons*, 459 F.3d 999, 1028 (10th Cir. 2006)).

emotionally charged trial, the prosecutor's closing argument need not be confined to such detached exposition as would be appropriate in a lecture.'"[33]

First, Defendant objects to the government's statement that Defendant stood "in opposition to the rule of law," and that his conduct would "lead to anarchy and chaos."[34]

"It is improper for a prosecutor to suggest that a jury has a civic duty to convict,"[35] or to "suggest[] they can act as the 'community conscience' to society's problems."[36]

When considered in context, the Court is not convinced that the government's comments were improper. During closing arguments, the government argued that Defendant's asserted good-faith defense was implausible, disingenuous, and had been concocted by Defendant as an attempt to avoid tax obligations. Such conduct, the government argued, was not harmless—it is contrary to the law and could have far-reaching effects. Rather than encouraging the jury to convict based on outrage, the government's argument encouraged the jury to convict based on the government's assertion that Defendant's good-faith defense was not believable, and that Defendant's conduct was unlawful.

Second, Defendant objects to the government's comments that Defendant had violated a "priceless social contract" under which citizens pay taxes "to contribute to the wellbeing of our

---

[33] *United States v. Fleming*, 667 F.3d 1098, 1104 (10th Cir. 2011) (quoting *United States v. Jones*, 468 F.3d 704, 708 (10th Cir. 2006)).

[34] Docket No. 102, at 88.

[35] *Wilson*, 536 F.3d at 1120; *see also United States v. Hunte*, 559 F. App'x 825, 833 (11th Cir. 2014) (unpublished) (finding improper a prosecutor's statement that "without citizens filing tax returns, we would have no tax revenue, . . . no way to build schools . . . no way to fight wars" (internal quotation marks omitted)).

[36] *United States v. Rogers*, 556 F.3d 1130, 1143 (10th Cir. 2009).

communities," and that Defendant enjoyed a number of societal benefits funded by the jurors' tax dollars.[37]

"'Remarks invoking the individual pecuniary interests of jurors as taxpayers are universally viewed as improper.'"[38] By arguing that Defendant evaded his taxes while benefiting from the infrastructure funded in part by the jurors, the government's remarks implicated the pecuniary interests of the jurors. As such, the Court finds that it was improper for the prosecutor to comment about Defendant enjoying services funded by taxpayers—including the jurors—while avoiding his own tax obligations.

However, for many of the reasons discussed above, Defendant has failed to demonstrate that the comments impaired his right to a fair and impartial trial. First, the jury was instructed on two separate occasions that the statements and arguments of counsel were not evidence.[39] Additionally, the Court explained, "[I]t would be a violation of your sworn duty . . . to base your verdict upon anything but the evidence received in this case."[40] The Court also explained that the jury was to perform its duty "without bias or prejudice as to any party. The law does not permit jurors to be governed by sympathy, prejudice, or public opinion. Both the defendant and the public expect that [the jury] will . . . reach a just verdict, regardless of the consequences."[41]

---

[37] Docket No. 102, at 88–89.

[38] *United States v. Morris*, 573 F. App'x 712, 725 (10th Cir. 2014) (unpublished) (quoting *United States v. Palma*, 473 F.3d 899, 902 (8th Cir. 2007) (collecting cases)).

[39] Docket No. 95, at 3 ("Statements, arguments, and questions by lawyers are not evidence."); *id.* at 11 ("You are not to consider the . . . arguments of counsel as evidence.").

[40] *Id.* at 11.

[41] *Id.* at 12.

The Court finds that the extent of the misconduct was minimal because "[i]t would surprise no jury to learn that IRS refunds consist of taxpayer dollars."[42]  Rather than inciting the jurors' passions, the prosecutor's comments were broad generalizations about the connection between public services and tax funds, which is permissible discussion of "adverse social consequences that are matters of common knowledge."[43]

Moreover, the comments played a minor role in the trial.  The government did not rely on the comments as a recognizable theme in their case and the comments only occurred in the final moments of closing arguments.

Finally, there is no indication that the jury convicted Defendant on grounds beyond the admissible evidence as a result of these comments.  The jury appeared to carefully consider the counts charged and the evidence presented and returned a not-guilty verdict on Count V.  Had the prosecutor's comments so inflamed the passions of the jury, it is unlikely that they would have returned a not-guilty verdict on any counts.

Based on the foregoing, the Court finds that Defendant has failed to demonstrate that any improper statements impaired his right to a fair and impartial trial, and has therefore failed to satisfy the burden necessary to justify a mistrial or new trial.

E.    CUMULATIVE ERROR

"A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative

---

[42] *Morris*, 573 F. App'x at 725.

[43] Bennett L. Gershman, Prosecutorial Misconduct § 11:4, at 497–98 (2d ed. 2014) (citing *United States v. Cotter*, 425 F.2d 450, 452–53 (1st Cir. 1970) ("There is a difference between reminding jurors that the payment of taxes is essential to the conduct of government, and selecting some single matter especially provocative of emotion.")).

effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless."[44]

Having considered each of Defendant's objections individually, the Court finds that even when considered in the aggregate, the prosecutor's comments did not impair Defendant's right to a fair and impartial trial, for the reasons discussed above.

## IV.  CONCLUSION

It is hereby

ORDERED that Defendant's Motion for Mistrial and/or New Trial (Docket No. 101) is DENIED.

DATED this 18th day of December, 2014.

BY THE COURT:

_/s/ Ted Stewart_
Ted Stewart
United States District Judge

---

[44] *Lopez-Medina*, 596 F.3d at 740–41 (quoting *Hooper v. Mullin*, 314 F.3d 1162, 1178 (10th Cir. 2002)).